IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOVATEK CORPORATION : CIVIL ACTION
:
v. :
:
FLORENCE MALLET, et al. : NO. 18-3279

MEMORANDUM

Bartle, J.                                                            August 24, 2018

The court has before it the motion of plaintiff Novatek Corporation ("Novatek") for a preliminary injunction to compel defendant Florence Mallet to place in escrow the net proceeds from the pending sale of her home to ensure that the proceeds are available to satisfy any money judgment ultimately entered against her in this action.

Novatek originally filed its complaint in the Court of Common Pleas of Montgomery County, Pennsylvania on July 26, 2018. Defendants Mallet and her son Sebastien Kamyab timely removed the action to this court on August 2, 2018 based on diversity of citizenship and the requisite amount in controversy.[1] See 28 U.S.C. § 1332(a) & (c).

Novatek, owned by three stockholders equally, is in the business of manufacturing and selling specialty filters for

---

1. We find that Novatek is incorporated in Pennsylvania with its principal place of business here while Mallet, at the time the complaint was filed, was a citizen of Florida and Kamyab a citizen of California.

commercial and industrial uses.  Mallet is Novatek's former treasurer and chief financial officer, a former director, and one of its three shareholders.  Kamyab is a former sales representative on an independent contractor basis for Airganics, a Novatek subsidiary.

According to the verified complaint, Mallet misappropriated significant company funds for personal use.  Mallet also allegedly paid extravagant expenses of and commissions to her son in connection with his work for Airganics.  The complaint alleges counts against Mallet for breach of fiduciary duty, corporate waste and mismanagement, breach of the duty of good faith and fair dealing, and injunctive relief.  It also avers counts against Mallet and Kamyab for conversion, civil conspiracy, and an accounting.  Novatek seeks damages in the amount of corporate funds Mallet improperly spent for personal use and paid to Kamyab.

Simultaneous with the filing of the complaint, Novatek moved for a special, preliminary and/or permanent injunction in the state court to require Mallet to place in escrow the net proceeds of the anticipated sale of her home in Chester County, Pennsylvania, in order to ensure that those proceeds are reachable to pay any judgment entered in favor of Novatek.  The motion stated that the closing could be as soon as August 16, 2018.

After notice and a status conference with counsel for all parties, this court on August 10, 2018, pursuant to Rule 65 of the Federal Rules of Civil Procedure, entered the temporary restraining order requested by Novatek in order to maintain the status quo.[2] On August 20, 2018, the court held an evidentiary hearing on Novatek's motion for a preliminary injunction and on August 23, it extended the temporary restraining order until September 7, 2018, to allow time to decide the motion for a preliminary injunction. See Fed. R. Civ. P. 65.

I

The facts established at the evidentiary hearing on plaintiff's motion for a preliminary injunction are as follows. Novatek is an S-corporation founded in 1997 which, as stated above, is involved in the manufacture and sale of air filters for commercial and industrial uses.[3] The company is owned equally by Mallet, Brian Harkins, and Mark Rissmiller. Harkins is its president and chief executive officer. In that role, he is responsible for the sales, marketing, and research and

---

2. Plaintiff cited and the court relied upon our Court of Appeals' decision in Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 194-97 (3d Cir. 1990). Defendants cited no contrary authority at that time.

3. An S-corporation is a small corporation that is disregarded as an entity for federal tax purposes and instead taxed via its shareholders on a pass-through basis. 26 U.S.C. § 1362; see also In re Majestic Star Casino, LLC, 716 F.3d 736, 742 n.2 (3d Cir. 2013).

development for the company.  Rissmiller is the vice president and secretary.  He handles purchasing, operations, and manufacturing as well as research and development.  Mallet, as treasurer and chief financial officer, oversaw Novatek's finances.

In early 2018, Harkins and Rissmiller met with accountants to review the company's 2017 earnings and tax statements.  During this review, they discovered that Novatek's earnings were significantly lower than anticipated despite record sales in the preceding year.  Thereafter Novatek, with the agreement of all three shareholders, retained O'Dell Valuation Consulting LLC to conduct a valuation of the company.  The resulting valuation was significantly lower than Harkins and Rissmiller expected.  These disappointing results prompted Harkins and Rissmiller to undertake a review of two Novatek corporate American Express credit card accounts.

The review revealed that Mallet had charged numerous personal expenses to the corporate credit cards, including travel to France and Argentina, flood insurance for her personal real estate in Florida, personal home renovations, charitable donations, clothing and shoes, a high-end espresso machine, and college tuition for Kamyab, her son.[4]  Rissmiller calculated that

---

4.  The evidence showed that Mallet had repaid Novatek for at least a portion of the expenses related to the Argentina trip.

-4-

Mallet's unauthorized spending as currently known totals at least $600,000 over a several year period and expects this amount to rise after further investigation. The investigation also showed that Mallet had charged to Novatek first-class airfare, luxury hotels, and meals for Kamyab in connection with his work with Airganics. In addition, Mallet provided Kamyab with a twenty-percent sales commission for his work while other sales representatives for Novatek received only a ten-percent commission.

At the hearing, it appeared that the essence of Novatek's complaint is Mallet's breach of an oral agreement among the shareholders. All three shareholders testified that there was an unwritten agreement among them that they could charge personal expenses to Novatek. Rissmiller admitted that he charged to corporate credit cards several dinners and trips with his wife, gas and maintenance for his family's cars, and home repairs, among other things. Harkins likewise used company funds to pay for personal expenses such as his son's college tuition, gas for his family's cars, and travel including a plane ticket from St. Louis to Philadelphia for his son's girlfriend.

Rissmiller and Harkins explained that the agreement included an understanding that each shareholder's personal spending from corporate funds was to be reasonable, although no specific dollar limit was ever discussed, and that the spending

-5-

was to be roughly equal among the three shareholders.[5] Mallet did not dispute this understanding. Harkins and Rissmiller determined that Mallet's spending was improper because it became excessive and grossly disproportional to their own respective personal spending. Rissmiller estimated that Mallet's expenditures were ten times greater than the other two shareholders. However, Harkins and Rissmiller have not performed an accounting of their own spending and did not present evidence of the specific amount they have spent in comparison to Mallet.

On June 4, 2018, the Board of Directors of Novatek held a meeting at which Mallet, Harkins, and Rissmiller were present along with counsel for Novatek in this action. The Board voted to terminate Mallet as Novatek's treasurer and chief financial officer. The Board also voted to terminate Susan Lane, Mallet's long-time personal friend who had been employed by Novatek as a financial assistant since November 2017. At a shareholders' meeting that same day, Mallet was removed as a director.

---

5. At the hearing, defendant introduced into evidence a May 29, 2008 check for $12,672.10 payable from Novatek to HAWS Enterprises with the notation "Amex 2006 diff." Rissmiller explained that the Novatek owners had agreed to give him this money to purchase a car after a review of personal spending by the owners showed that Harkins and Mallet had charged more than Rissmiller. This was the only evidence presented of a post-hoc reconciliation of personal spending by the owners.

Harkins and Rissmiller explained that they voted to remove Mallet due to her excessive personal spending as well as her alleged shredding of corporate documents and her refusal to provide financial information such as passwords and usernames for certain corporate accounts. Although Mallet admitted that she spent corporate funds for personal expenses, she denied that her charges were excessive or unauthorized by Harkins and Rissmiller. She denied that she shredded corporate documents or refused to provide financial information when requested.

Within days after she was terminated and before this lawsuit was filed, Mallet listed her home in Chester County for sale for $420,000, a price recommended by her real estate agent. Mallet purchased the property in 1994, several years before Novatek was formed, and there was no evidence that she used corporate funds to buy it. On June 25, 2018, a few days after it was listed, Mallet contracted to sell the property for $412,000. The closing was initially scheduled for August 16, 2018 but was postponed to August 23, 2018 at Mallet's request. Mallet expects to net approximately $140,000 from the sale.

In addition to her Chester County home, Mallet owns a home in St. Petersburg, Florida which she purchased in 2009. This property would likely be protected from a judgment lien

under the Florida homestead exemption.[6] She has retirement accounts that likely would not be subject to garnishment and a checking account containing around $2,500. Other than her Chester County home, the only significant asset Mallet would have to satisfy any potential judgment entered against her in this action is her one-third share of Novatek stock. The parties dispute its value. The evidence presented was inconclusive as to whether it would be sufficient to satisfy any judgment entered against her.

After her termination from Novatek, Mallet relocated to Florida where she is now a citizen. Except for her son, her family lives there, including her parents and a sibling, and she is currently looking for employment in that area. While Mallet is a dual citizen of France and the United States, she has resided in the United States since 1977. We accept her testimony that she has no intention of moving back to France where she has no close relatives.

II

For a preliminary injunction to be granted the following prerequisites must be established as set forth in Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017):

---

6. Under the Florida Constitution, homestead property is "exempt from forced sale ... and no judgment, decree or execution [can] be a lien thereon." Fla. Const., Art. 10, § 4(a).

> (1) a reasonable probability of
> eventual success in the litigation, and
> (2) that it will be irreparably injured
> . . . if relief is not granted. . . .
> [In addition,] the district court, in
> considering whether to grant a
> preliminary injunction, should take
> into account, when they are relevant,
> (3) the possibility of harm to other
> interested persons from the grant or
> denial of the injunction, and (4) the
> public interest.

(quoting Del. River Port Auth. v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919-20 (3d Cir. 1974)). The moving party has the burden to demonstrate the first two factors. The district court must also consider the remaining factors when they are relevant. Id.

Even if Novatek meets its burden and the court makes other relevant findings in its favor, this does not end the analysis. The equity power of the federal courts is not without limits in the circumstances presented here. The Supreme Court detailed those limits in Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). There, Grupo Mexicano de Desarollo ("Grupo"), a Mexican holding company, had issued guaranteed notes but thereafter defaulted. 527 U.S. at 310-11. Holders of the notes sued Grupo in a diversity action and sought a preliminary injunction to restrain Grupo from transferring or dissipating certain assets in order to have those assets preserved to pay any judgment. Id. at 310-12. The

District Court granted the preliminary injunction, and the Court of Appeals for the Second Circuit affirmed.  Id. at 312.  The Supreme Court reversed.  Id. at 333.

The Supreme Court made clear that the equity power of the federal courts equates with that exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the Judiciary Act of 1789.  Id. at 318-19.  Rule 65 of the Federal Rules of Civil Procedure has not altered the contours of this power.  Id.  The flexibility of equity must be exercised within the traditional bounds of equity jurisdiction, absent a federal statute which has expanded the traditional rules for injunctive relief.  Id. at 322.  The Supreme Court also recognized that equity power is more expansive where the public interest is involved than where only private interests are implicated.  Id. at 326.

In reversing the grant of a preliminary injunction, the Supreme Court quoted with approval the dictum in DeBeers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 221 (1945):

> To sustain the challenged order would create a precedent of sweeping effect.  This suit, as we have said, is not to be distinguished from any other suit in equity.  What applies to it applies to all such.  Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of

> his funds or property as the court deems
> necessary for security or compliance with
> its possible decree.  <u>And, if so, it is
> difficult to see why a plaintiff in any
> action for a personal judgment in tort or
> contract may not, also, apply to the
> chancellor for a so-called injunction
> sequestrating his opponent's assets pending
> recovery and satisfaction of a judgment in
> such a law action.  No relief of this
> character has been thought justified in the
> long history of equity jurisprudence</u>.

<u>Grupo</u>, 527 U.S. at 222-23 (emphasis added).

The Supreme Court went on to discuss the policy arguments for and against the use of a preliminary injunction to restrain a defendant's use or dissipation of assets so as to preserve those assets for the payment of a possible future judgment in a pending lawsuit.  While recognizing some strong policy reasons supporting the use of an injunction in such circumstances, it also pointed out the dangers inherent in such power, characterizing it as a "nuclear weapon."  <u>Id.</u> at 332.  If such power is to be bestowed on the federal courts, the Supreme Court declared, it is for Congress to do so.  <u>Id.</u> at 333.  In the meantime, the traditional rule remains that the federal courts have no equity power in the circumstances presented here to restrain a defendant from controlling or alienating its assets pending a decision in an action for money damages and before any judgment is entered.  <u>Id.</u>

-11-

In this action, Novatek seeks to recover some $600,000 in damages from Mallet for her breach of the oral agreement she had with Harkins and Rissmiller concerning the use of corporate funds for personal purposes. Accordingly, this is an action at law and not an equitable proceeding. See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 47-48 (1989); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477 (1962). As a result, Grupo controls.

Novatek requests this court to require her to put into escrow the net proceeds from the sale of her home in Chester County until the lawsuit is resolved. As noted above, Mallet bought her house in 1994, some three years before Novatek was established. Corporate funds were not used to make the purchase. The purchase and ownership of the house is clearly collateral to the merits of the action. In essence, as noted above, this is an action for damages for breach of contract unrelated to Mallet's home. It is not a case where there is a lien or where ownership or control of specific property such as a bank account, a piece of real estate, or a work of art is at issue. Nor are we concerned with a matter of public interest. See Grupo, 527 U.S. at 326; United States v. First Nat'l City Bank, 379 U.S. 378, 382-83 (1965). Only private interests are involved here.[7] See Grupo, 527 U.S. at 326. Finally, there is

---

7. We also note that the private interests here do not weigh heavily in favor of either party. While Novatek has an interest

-12-

no relevant federal statute which provides the court with expanded equitable power beyond what exists in the traditional usages of equity. See Grupo, 527 U.S. 326; First Nat'l City Bank, 379 U.S. at 380; Deckert v. Indep. Shares Corp., 311 U.S. 282, 289-90 (1940).

Under the circumstances, we conclude that even if Novatek has proven the elements for a preliminary injunction under Reilly, Novatek asks for equitable relief this court has no power to grant. See Grupo, 527 U.S. at 333. In sum, the court has no authority to enter a preliminary injunction to compel Mallet to place in escrow the net proceeds of the sale of her home in Chester County while this court adjudicates the pending action against her for money damages.

III

Novatek points out that Grupo simply decides federal law. It argues that Pennsylvania law permits the grant of a preliminary injunction under the circumstances presented here and should be applied in this diversity action. In Grupo, likewise a diversity action, the Supreme Court left open the question whether under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), federal courts must look to and apply state equity

---

in satisfying any judgment entered here to alleviate the financial harm allegedly caused to the company, Mallet has an interest in the use of funds from the sale of her home to cover her living expenses and legal fees while she seeks reemployment and defends against this action.

principles in deciding if a party like Novatek is entitled to preliminary injunctive relief. See Grupo, 527 U.S. at 318 n.3. The Court refused to reach the question because it had not been raised below. See id.

Even assuming that we must apply state law, we must first determine what if anything the Pennsylvania Supreme Court has spoken on this subject. See, e.g., Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 91–92 (3d Cir. 2008). If there is no reported decision by the Pennsylvania Supreme Court addressing this issue, we must predict how the Pennsylvania Supreme Court would rule. Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000). In so doing, we may "give due regard, but not conclusive effect, to the decisional law of lower state courts." Id. (citing Burke v. Maassen, 904 F.2d 178, 182 (3d Cir. 1990)). The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. (quoting West v. AT & T Co., 311 U.S. 223, 237 (1940)).

Novatek has cited only two cases from the Pennsylvania Superior Court, one of the Commonwealth's intermediate appellate tribunals. These cases are Walter v. Stacy, 837 A.2d 1205 (Pa. Super. 2003), and Ambrogi v. Reber, 932 A.2d 969 (Pa. Super. 2007).

In Walter v. Stacy, the Superior Court had before it the question whether a preliminary injunction was valid without the filing of a bond. 837 A.2d at 1208. The Court held that it was not and vacated the injunction. Id. at 1208-09. The Common Pleas Court had entered a preliminary injunction to require defendants in a wrongful death case to put in escrow the proceeds of the sale of real estate before the case was finally adjudicated. Id. In dictum, the Superior Court stated that the trial court had not erred on the merits in granting the injunction. Id. at 1209-10. The Superior Court cited no supporting Pennsylvania Supreme Court precedent.

The second case, Ambrogi v. Reber, involved a civil action for damages resulting from the death of a mother and her child in an apartment fire. 932 A.2d at 971-72. The Superior Court upheld the grant of a preliminary injunction compelling the defendant apartment owners to place in escrow the proceeds of the sale of real estate, again before any judgment was entered. Id. at 974-80. It did so relying on the Superior Court's decisions in Walter and Citizens Bank of Pennsylvania v. Myers, 872 A.2d 827, 836 (Pa. Super. 2005), and again did not cite any supporting precedent of the Pennsylvania Supreme Court.

We predict that the Pennsylvania Supreme Court, if faced with the issue pending here, would not adopt the reasoning set forth in Walter and Ambrogi but would instead follow the

traditional equity analysis as outlined in Grupo.  A Pennsylvania statute provides, with certain exceptions not relevant here:

> The common law and such of the statutes of England as were in force in the Province of Pennsylvania on May 14, 1776 and which were properly adapted to the circumstances of the inhabitants of this Commonwealth shall be deemed to have been in force in this Commonwealth from and after February 10, 1777.[8]

See 1 Pa. Cons. Stat. Ann. § 1503(a).  As explained in Grupo, the contours of the equity power in England at that time are the same as those now binding on the federal courts.  See 527 U.S. at 318-22.  Since no Pennsylvania Supreme Court decision or state statute has been cited to the contrary,[9] we conclude that the traditional usages of equity as existed in the late eighteenth century in England and as outlined in Grupo continue to be the law of the Commonwealth of Pennsylvania.  Consequently, we need not decide whether under Erie we must apply the equity jurisprudence of the Commonwealth because it is the same as exists for the federal courts in this instance.

---

8.  The exceptions include any law requiring allegiance to the British Crown or acknowledging the authority of the heirs and devisees of William Penn, Esq., or any law which is repugnant to the Constitution of the Commonwealth of Pennsylvania or of the United States.  See 1 Pa. Cons. Stat. Ann. § 1503(c)(2)-(4).

9.  The statute also provides that it is not applicable to any statute or law that has been "amended or repealed or . . . has expired."  1 Pa. Cons. Stat. Ann. § 1503(c)(1).

IV

Accordingly, the court will deny Novatek's motion for a preliminary injunction and vacate the Temporary Restraining Order entered on August 10, 2018 and the Extended Temporary Restraining Order entered on August 23, 2018.